State ex rel. vs. Tuffts.

———————●———————

## STATE ex rel. vs. TUFFTS.

LEGISLATIVE ENACTMENTS: *Unconstitutionality of, how pleaded.*

Where a party relies upon the fact, that an act of the legislature was not constitutionally passed, as that the act was not read three times on different days, the fact that it was not, instead of the pleader's information and belief, should be unequivocally averred.

*QUO WARRANTO.*

*T. D. W. Yonley*, Attorney General, for plaintiff.

McCLURE, C. J.   A writ of *quo warranto*, issued against the defendant, commanding him to show by what warrant and authority he assumed to exercise the office and duties of circuit clerk of Ouachita county.

In response thereto, he answers that he was duly elected and commissioned county clerk of said county of Ouachita, and that by virtue of said office of county clerk, he is by law entitled to discharge the office and duties of circuit clerk of said county of Ouachita.   To the response the attorney general replies, that since said election, commission, qualification, etc., the general assembly of the state of Arkansas passed an act, entitled " An act to provide for clerks of circuit courts in certain counties and to define their duties," approved April 17, 1873, whereby it is enacted, that hereafter in all counties in this state, having a population of ten thousand inhabitants and upward, to be determined by the census taken by the authority of the United States in the year 1870, there shall be elected by the qualified electors of every such county, a clerk of the circuit court of such county, etc., with the proviso in said act, that until the general election to be held in the year 1876, the governor should appoint a clerk of the circuit court for each county, who, under the provisions of said act should be entitled to take the same, and such appointee should hold the office and perform the duties of circuit clerk, until the general election to be holden in the year 1876.   That the county of Ouachita, by the census aforesaid, had a population of ten thousand inhabitants and upward, and under the provisions of said act was entitled to a circuit clerk, and being so entitled, his excellency, Elisha Baxter, governor of the state of Arkansas, in

pursuance of the provisions of said act, did appoint one William B. Coit to the office of circuit clerk of said county of Ouachita, etc. That said Coit has been duly commissioned, that he has given bond and qualified, etc., and that by reason thereof became entitled to the said office, etc. To this replication the defendant rejoins by saying, that the county of Ouachita is not entitled to a circuit clerk under the provisions of the act in said replication mentioned, for the reason that since the census of said county was taken, the general assembly of the state Arkansas, on the 2d of January, 1871, passed an act, entitled "An act to create the county of Nevada and for other purposes," approved March 20, 1871, by which said act, townships eleven, twelve, thirteen and fourteen, in range twenty, and townships ten, eleven, twelve and thirteen in range twenty-one (said townships comprising the political or voting townships of Carouse, Caney and Missouri, and the greater part of Jackson and one half of Jefferson), were taken from the territorial limits of the county of Ouachita, and made a part of said county of Nevada, thereby leaving said county of Ouachita at that time and since with a population of less than ten thousand. The defendant further says, that he is informed and believes that the said act of the general assembly, entitled "An act to provide for clerks of circuit courts in certain counties, and define their duties," approved April 17, 1873, was not passed in accordance with the provisions of article five, section twenty-one, of the constitution of the state of Arkansas, the same not having been read three times on different days in the house of representatives of said general assembly, as will more fully appear by reference to the journal of the house of representatives.

If the act was not passed in the manner required by the constitution, the facts which render it invalid should be distinctly stated. The defendant's "information and belief"

that a bill was not read three times, on different days, in the house of representatives before its final passage, may induce him to indulge in certain conclusions, but unless he disclose the facts to the court upon which he bases his conclusions, we have no means of ascertaining whether his conclusions of law are well founded. What the journal of the house of representatives may show is one thing, and what the defendant is "informed and believes" they show is quite another. The act of April 17, 1873, is published with the other acts of the legislature as being a valid act, and until it is shown that it is not, we shall indulge all presumptions in its favor. If the law was not read three times, on different days, the fact that it was not, instead of the pleader's "information and belief," should be unequivocally averred, to the end that an issue may be formed as to the fact and not as to the "belief." This court will not, at the mere suggestion of a pleader, that a law was not legally passed, examine the house journals to ascertain if his "information and belief" be well founded. Having disposed of this portion of the rejoinder, the question presented is, Does the rejoinder show that Ouachita county did not have the requisite number of inhabitants? The averment is, that the political townships of Carouse, Caney and Missouri, and the greater part of Jackson and one-half of Jefferson were, by the act creating the county of Nevada, taken from the territorial limits of the county of Ouachita, "thereby leaving said county of Ouachita at that time and since with a population of less than ten thousand." Just how many inhabitants resided on the territory taken from Ouachita county and added to that of Nevada, is not stated. The rejoinder is very inartistically drawn, as it states conclusions of facts instead of the facts themselves. If the defendant had stated that by the census of 1870 the county of Ouachita had upwards of twelve thousand inhabitants, and that it was re-

duced below that number by the act taking the townships named from the county, stating the resident population thereof as shown by the census, he would have laid the foundation for the conclusion that the county was reduced below ten thousand, if the facts would warrant the assertion.

For our own satisfaction and for the purpose of ascertaining whether a substantial defense could be set up by the defendant, in the event he had leave to amend, we have examined the census of 1870, and find by deducting the resident population of the townships of Carouse, Caney and Missouri and three-fifths of Jackson and one-half of Jefferson, that the county of Ouachita would be left with a population of over ten thousand.

In view of this the demurrer to the rejoinder is sustained, and a judgment of ouster will be entered.